IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DANIEL L. STADLER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 13-1768-GMS |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM

Plaintiff Daniel L. Stadler ("Stadler") appeals from a decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title XVI of the Social Security Act, 42 U.S.C. § 401-434. The court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the court are the parties' cross-motions for summary judgment. (D.I. 11, 13). For the reasons set forth below, Stadler's motion for summary judgment will be GRANTED and the Commissioner's motion for summary judgment will be DENIED.

### I. BACKGROUND

#### A. Procedural History

Stadler filed an application for DIB on October 7, 2009, alleging disability beginning July 1, 2009. (Tr. 68-71, 82). The state agency denied Stadler's claim. (Tr. 57-67). Stadler requested a hearing before an Administrative Law Judge ("ALJ") which was held on April 15, 2011. (Tr. 496-541). At the hearing, Stadler was represented by his social worker, Helen Toomer. On May

26, 2011, the ALJ issued an unfavorable decision, finding that Stadler was not disabled. (Tr. 16-29). The Appeals Council denied Stadler's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 6-8). Over two years later, Stadler obtained counsel and filed a complaint in this court.[1] (D.I. 1).

### B.     The ALJ's Findings and Conclusions

The ALJ's findings of fact and conclusions of law in her decision may be summarized as follows. At step one, the ALJ found that Stadler has not engaged in substantial gainful activity since July 1, 2009. (Tr. 18). At step two, the ALJ concluded that Stadler has the following severe impairments: depression and a right knee injury. (*Id.*). The ALJ found record evidence of asthma, but concluded that it was a non-severe impairment. (Tr. 19). No other impairments were considered or discussed.

At step three, the ALJ concluded that Stadler does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 19). The ALJ concluded that Stadler's knee pain did not satisfy Listing 1.02A, because there was no evidence that Stadler would be unable to ambulate more than twelve months after his anticipated knee operation. (*Id.*). The ALJ also concluded that Stadler's

---

[1]     Under 42 U.S.C. § 405(g), a claimant who wishes to obtain judicial review of an adverse decision must file a civil complaint within sixty days after the Appeals Council denies review. The 60–day requirement is not jurisdictional, but an affirmative defense based on a statute of limitations. *Bowen v. City of New York*, 476 U.S. 467, 478 (1986). Inexplicably, the Commissioner did not challenge the timeliness of Stradler's claims in her answer or briefs. As a result, this affirmative defense has been waived. *See Johnson v. Sullivan*, 922 F.2d 346, 355 (7th Cir. 1990) (finding that the Commissioner failed to raise, and therefore waived, the sixty-day statute of limitations defense); *Castell v. Comm'n of Soc. Sec*, 2008 WL 1902068, at *1 (E.D. Mich. Apr. 30, 2008) (same); *Kirk v. Astrue*, 2008 WL 2595178, at *2 n. 3 (W.D. Wash. June 27, 2008) (same); *Moten v. Barnhart*, 2007 WL 2875499, at *5 n. 3 (N.D. Ill. Sept. 27, 2007) (same); *Janas v. Barnhart*, 451 F. Supp. 2d 483, 486 n. 2 (W.D.N.Y. 2006) (same).

2

"mental impairment" did not meet or medically equal Listing 12.04, which addresses "Affective Disorders" such as depression. (*Id.*). The ALJ did not consider or discuss any listings besides 1.02A (joint pain) and 12.04 (affective disorders).

The ALJ found that Stadler has the residual functional capacity to perform light work, except that he is limited to all posturals occasionally but no climbing of a rope, ladder, or scaffold. Stadler is limited to simple, unskilled work not at production pace, work that is essentially isolated with occasional supervision, and low stress work defined as only occasionally needing to make decisions or use judgment. (Tr. 21)

At step four, the ALJ concluded that Stadler is unable to perform any past relevant work. (Tr. 27). Stadler has past work experience as a salad bar attendant, above-ground miner, fence installer, lubrication specialist, and dishwasher. (Tr. 512-15, 536). All of these jobs involved a medium to heavy work load which exceeded the light work restriction in the residual functional capacity. (Tr. 27).

At step five, the ALJ found that, considering Stadler's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 27). The ALJ identified the following jobs: packer, housekeeper, and inspector. (Tr. 28). The ALJ stated that transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Stadler is "not disabled," whether or not he has transferable job skills. (*Id.*). Thus, the ALJ concluded that Stadler has not been under a disability, as defined in the Social Security Act from July 1, 2009 until May 26, 2011, the date of her decision. (*Id.*).

## II. STANDARD OF REVIEW

A reviewing court will reverse the ALJ's decision only if the ALJ did not apply the proper legal standards or if the decision was not supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). If the ALJ's findings of fact are supported by substantial evidence, the court is bound by those findings even if it would have decided the case differently. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). Evidence is considered "substantial" if it is less than a preponderance but more than a mere scintilla. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether substantial evidence supports the ALJ's findings, the court may not undertake a *de novo* review of the decision, nor may it re-weigh the evidence of record. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986).

In Social Security cases, the substantial evidence standard applies to motions for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(c). *See Woody v. Sec'y of the Dep't of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988).

## III. DISCUSSION

Stadler makes several arguments in support of his motion for summary judgment. First, according to Stadler, the ALJ failed to consider whether his intellectual disability meets or equals the requirements of Listing 12.05C. (D.I. 12 at 8-10). Second, the ALJ's decision did not account for his long history of auditory and visual hallucinations. (*Id.* at 12). Third, the ALJ impermissibly cherry-picked evidence from the available medical opinions to support her conclusions and rejected probative contrary evidence. (*Id.* at 10-11). Finally, the ALJ's conclusion that Stadler

was capable of light work despite his severe knee impairment was not supported by substantial evidence. (*Id.* at 14-16). Each of these arguments are addressed in turn.

### A. Intellectual Disability

An ALJ's failure to specifically identify a particular listing in her decision does not automatically result in error. However, where there is ample evidence in the record to support a finding that a claimant's impairment met or equaled a listed impairment, an ALJ must explain her reasons why the claimant's impairment did not meet or equal that listing. *Campanaro v. Colvin*, 2014 WL 4272728, at *19 (M.D. Pa. Aug. 28, 2014); *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir.1994) (explaining that the Commissioner "must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition").

Here, the ALJ failed to discuss Stadler's intellectual disability at any step in the sequential process even though there is evidence in the record suggesting that he met all three requirements of Listing 12.05C. That listing requires: (1) a valid verbal, performance, or full scale IQ score between 60 and 70; (2) another impairment "imposing an additional and significant work-related limitation of function;" and (3) deficits in adaptive functioning initially manifested before age 22. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05; *Markle v. Barnhart*, 324 F.3d 182, 187 (3d Cir. 2003).

Brian Simon, Psy.D, a psychological consultative examiner for the state agency, measured Stadler's IQ using the Wechsler Adult Intelligence Scale–Third Edition. (Tr. 242-43). The test yielded a verbal IQ score of 64, a performance IQ score of 72, and a full scale IQ score of 64. (*Id.*). The regulations direct the Commissioner to use the claimant's lowest score for the IQ requirement. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00D; *Illig v. Comm'r Soc. Sec.*, 570 F. App'x 262, 265 (3d Cir. 2014). Stadler's two lowest scores of 64 are within the required range. The

requirement to have another impairment imposing a significant work related limitation is satisfied if the ALJ finds, as she did here, a "severe" impairment at step two. *Markle*, 324 F.3d at 188; 65 Fed. Reg. 50746, 50772 (2000). Thus, the evidence in the record shows that Stadler has met the first two requirements of Listing 12.05C.

The third requirement (deficits in adaptive functioning before age 22) may be demonstrated by, among other things, enrollment in special education classes, poor school performance, and not completing a high school education. *See Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x 155, 160 (3d Cir. 2008). In addition, the Third Circuit has held that a claimant's ability engage in the following activities is not inconsistent with a qualifying intellectual disability: paying his own bills, adding and subtracting, using an ATM machine, taking care of his own personal needs, identifying and administering his medication, holding previous jobs, obtaining a GED, and receiving positive evaluations from a psychologist regarding judgment, independent functioning, and his ability to follow rules, deal with the public, relate to co-workers, and interact with supervisors. *Markle*, 324 F.3d at 183-87.

Here, there is some evidence in the record that Stadler had deficits in adaptive functioning before age 22. Stadler attended special education classes from the fourth through seventh grades, repeated seventh grade, and dropped out shortly after being mainstreamed. (Tr. 173, 241, 262). Thus, the court will reverse and remand so that the ALJ may consider in the first instance whether this evidence meets or equals the criteria in Listing 12.05C. *See Vivaritas*, 264 F. App'x at 160 (reversing Commissioner's denial of benefits where the ALJ failed to address the claimant's intellectual disability commenced during the developmental period).

6

**B. Schizophrenia**

Stadler argues that the ALJ minimized his long history of auditory and visual hallucinations, which are symptoms of schizophrenia. (D.I. 12 at 12-13). It is surprising that the ALJ's decision did not discuss Stadler's diagnosed schizophrenia at any step in the sequential evaluation when there is substantial evidence in the record regarding this impairment. For example, the record shows:

- Multiple reports of auditory and visual hallucinations over several years to various mental health care providers from whom Stadler sought treatment. (*See* Tr. 172, 207, 263, 280, 333, 337, 352, 355, 356, 369, 370, 373, 382, 385, 387, 390, 392, 411, 414, 417, 426, 440). The treating medical sources generally found Stadler to be a "reliable informant." (*See* Tr. 412, 415, 418, 427, 441).

- Diagnoses of schizophrenia from several different mental health care providers that treated Stadler over the years. (*See* Tr. 333 (diagnosis of paranoid schizophrenia by Don Napolin, LCSW, CADC in December 2009); Tr. 340 (diagnosis of paranoid schizophrenia by Oscar Galvis, MD in January 2010); Tr. 162-163 (diagnosis of schizoaffective disorder by Heather Kennedy, MD dated May 2011); Tr. 208, 414, 417, 423, 426 (repeated diagnosis of paranoid schizophrenia by Praful C. Desai, MD from December 2009 to March 2011). Even Dr. Ferreira, a state agency reviewing psychologist, found that Stadler had "persistent" hallucinations or delusions consistent with schizophrenia. (Tr. 249).

- Several multi-day hospitalizations for auditory and visual hallucinations related to schizophrenia. (*See* Tr. 203-08, 443-46 (hospitalization from 12/17/09 to 12/23/09); Tr. 263-69 (hospitalization from 4/19/10 to 4/29/10); Tr. 440-42 (hospitalization from 4/30/10 to 5/10/10); Tr. 283-85, 414-16 (hospitalization from 7/1/10 to 7/9/10); Tr. 279-82, 417-19 (hospitalization from 7/12/10 to 7/23/10); Tr. 304-07, 423-25 (hospitalization from 9/16/10 to 9/27/10); Tr. 426-29, 472-81 (hospitalization from 3/1/11 to 3/10/11); Tr. 472-81 (admission to emergency room for attempted suicide by intentional drug overdose)).

- A history of taking prescription medications that treat schizophrenia. (*See* Tr. 163-65, 194, 205, 265, 282, 307, 411, 416, 419).

The ALJ noted that the Dr. Simon had "the impression" that Stadler may have developed the auditory and visual hallucinations "to receive attention from other people." (Tr. 22-23). The ALJ's reference to Dr. Simon's opinion and complete silence regarding Stadler's diagnosis of schizophrenia suggests that the ALJ implicitly found the impairment to be non-severe. It seems

7

inconsistent for the ALJ to give greater weight to Dr. Simon's impression than to all the other evidence in record when the ALJ otherwise gave Dr. Simon's opinion "little weight."[2] (*See* Tr. 27).

It was not harmless error for the ALJ to not address at step two a mental impairment for which there was ample evidence in the record. "If the ALJ's step two error may have affected his step three analysis or resulted in a less restrictive RFC assessment than the record supports, the error cannot be deemed harmless." *Carlos v. Colvin*, 2015 WL 4127674, at *8 (C.D. Cal. July 8, 2015); *Warren v. Astrue*, 2010 WL 2998679, at *3 (W.D.N.Y. July 27, 2010) (failure to mention claimant's diagnosed and documented personality disorder let alone state a conclusion regarding its severity was legal error). At the very least, the evidence may support a conclusion that Stadler is presumptively disabled pursuant to Listing 12.03 for schizophrenia. Accordingly, on remand the ALJ should consider whether Stadler's schizophrenia is severe, and if severe, whether it meets or equals Listing 12.03. *See Nieves v. Astrue*, 2008 WL 4277995, at *4 (D. Colo. Sept. 16, 2008) (remanding where the ALJ "utterly failed at step two of the sequential evaluation process to address mental impairments that were clearly supported by the evidence").

### C. Medical Opinions

Stadler testified and the record shows that he had been regularly treated by several psychiatrists. (*See* Tr. 155, 162 (Heather Kennedy, MD of Horizon House); Tr. 155, 212-15, 279,

---

[2] If the ALJ agreed with Dr. Simon's conclusions regarding Stadler's schizophrenia, then it would seem appropriate for the ALJ to also discuss whether she agreed with Dr. Simon that Stadler had a borderline personality disorder. (*See* Tr. 245). Stadler has a history of being diagnosed with this mental impairment as well. (*See* Tr. 172 (diagnosis of "BPD"); Tr. 208 (diagnosis of Personality Disorder NOS); Tr. 253). But the ALJ omitted any discussion of Stadler's personality disorder, including whether it was a severe impairment at step two or met or equaled Listing 12.08 at step three.

8

304 (Oscar Galvis, MD); Tr. 208, 411-429 (Praful C. Desai, MD at Rockford Center). But no opinion on Stadler's functional limitations was obtained from any of his treating psychiatrists.[3] The only opinions in the record regarding the degree of functional limitation caused by his Stadler's mental impairments are from Dr. Simon, Dr. Ferreira, and Dr. Fugate, all psychologist consultants for the state agency. (Tr. 239-47, 248-62, 286-88). Dr. Fugate simply affirmed the opinion of Dr. Ferreira.

Stadler argues that the ALJ demonstrated a lack of consistent rationale by rejecting any part of a medical opinion that contradicted her own residual functional capacity, while adopting other parts of the same opinion that supported her conclusions. (D.I. 12 at 10-12). "[A]n ALJ is not permitted to 'cherry-pick' only that evidence that supports her position." *Griffith v. Astrue*, 839 F. Supp. 2d 771 (D. Del. 2012); *Lilly v. Astrue*, 2012 WL 256634, at *9 (D. Del. Jan. 30, 2012).

Here, it appears that the ALJ impermissibly cherry-picked certain statements in Dr. Simon's opinion. The ALJ noted that Dr. Simon had several negative opinions regarding Stadler's functional limitations. In the ALJ's words, Dr. Simon opined that:

> [Stadler] had some problems with working in complex or varied settings, some difficulty making decisions, adapting to different circumstances, and exercising judgment, insight and common sense at work. Dr. Simon opined further that [Stadler] may have some problems interacting appropriately with others and understanding, following, and carrying out instructions. Dr. Simon indicated that [Stadler] had a moderately severe limitation in his ability to relate to other people, deterioration of personal habits, ability to carry out instructions under

---

[3] The ALJ refers to one-page document signed by Mr. Donald Napolin, LCSW, CADC as his "opinion." (Tr. 26, 280). Mr. Napolin is a licensed clinical social worker that regularly treated Stadler. It is questionable whether this document was in fact Mr. Napolin's opinion. It is titled "case note," not addressed to anyone, even a generic "to whom it may concern," contains mostly summaries of his observations, and has no opinions on the degree of Stadler's functional limitations. (*Compare* Tr. 256; 259-62, 271). Ultimately, the ALJ rejected this "opinion," because Mr. Napolin is not considered an acceptable medical source. (*See* Tr. 26).

>ordinary supervision, to sustain work performance and attendance in a normal work setting, and cope with pressures of ordinary work.

(Tr. 26-27). The ALJ assigned "little weight" to these opinions, because she thought they were "inconsistent" with Dr. Simon's "evaluation notes." (Tr. 25). More specifically, the ALJ thought the negative opinions were inconsistent with, in her words, Dr. Simon's observation that Stadler had "good memory, had only minor problems with simple instructions, and had fair attention and concentration." (Tr. 27). The ALJ cited no other evidence to support her decision to reject Dr. Simon's negative opinions.

By selectively giving greater weight to Dr. Simon's positive observation, the ALJ also had to disregard contrary negative observations. Specifically, Dr. Simon had observed that Stadler also had "some difficulties" in concentration, persistence, and pace with respect to presentation and testing results; testing results showed "below average concentration and attentional abilities"; Stadler "needed questions and directions repeated to him on a few occasions"; "He did have some difficulties maintaining concentration, focus, and attention during the evaluation"; and Stadler had a below average score on a test for pace, coordination, and psychomotor speed. (Tr. 244).

The ALJ was similarly selective with the opinion of Dr. Ferreira. The ALJ gave "great" weight to Dr. Ferreira's opinion that Stadler was mildly limited in activities of daily living and moderately limited in social functioning, but only "little weight" to the opinion by the same doctor that Stadler had "marked" limitations on concentration, persistence, or pace. (Tr. 25). Interestingly, the ALJ rejected Dr. Ferreira's opinion regarding a marked limitation, because it was inconsistent with the only part of Dr. Simon's opinion that she adopted—i.e., that Stadler had "good memory, had only minor problems with simple instructions, and had fair attention and concentration." (Tr. 25-26).

10

This rejection is significant, because the ALJ had already found that Stadler experienced repeated episodes of decompensation, each of extended duration. (Tr. 20). If Stadler also had "marked" limitations of concentration, persistence, or pace, he may have been found disabled pursuant to Listing 12.04(B).[4] *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(B).

The ALJ's decision to give greater weight to only those portions of the opinions by Drs. Simon, Ferreira, and Fugate that were consistent with her residual functional capacity, while rejecting the remainder is not supported by substantial evidence. On remand, the ALJ should consider whether it would be beneficial to develop the record further by obtaining the opinions of Stadler's treating psychiatrists. That may be particularly helpful here where the ALJ had no opinions on Stadler's degree of functional limitations from an acceptable medical source that was also a treating psychiatrist. *See Plummer v. Apfel*, 186 F.3d 422, 434 (3d Cir.1999) (finding it noteworthy that none of the doctors who diagnosed the claimant with mental impairments evaluated its effects on her ability to work).

### D.     Knee Injury

Stadler argues that the ALJ failed to properly develop the evidence related to his right knee injury. (D.I. 12 at 14). As a result, the ALJ found that the right knee injury was a severe impairment, but failed to properly accommodate that impairment by finding Stadler capable of light work. (*Id.*; Tr. 21). The ALJ relied on the following evidence to support her conclusion:

---

[4]     To satisfy the "paragraph B" criteria of Listing 12.04, the mental impairment must result in at least two of the following: (i) marked restriction of activities of daily living; (ii) marked difficulties in maintaining social functioning; (iii) marked difficulties in maintaining concentration, persistence, or pace; or (iv) repeated episodes of decompensation, each of extended duration.

11

- Dr. Kandasamy, Dr. Yezdani, and Dr. Luther each noted that Stadler's gait and station were normal with no limb weakness, atrophy or fasciculation noted. (Tr. 24).

- Dr. Simon reported on March 8, 2010 that Stadler had no difficulties with ambulation. (*Id.*).

- Stadler admitted on August 25, 2010 that after participating in physical therapy, his right knee pain had significantly reduced from 10 out of 10, to 2 out of 10 and only hurt when he was getting into and out of a truck. (*Id.*).

- Dr. Mesa concluded that Stadler was showing improvement with increased range of motion and no instability. (*Id.*).

- Stadler was scheduled to have reconstructive knee surgery shortly after his hearing, and, there is nothing in the file indicating the he would be unable to ambulate more than twelve months after the operation. (*Id.*; Tr. 19).

The ALJ's conclusion that Stadler was capable of performing light work is not supported by substantial evidence for several reasons. First, the ALJ placed greater weight on the findings of Stadler's non-treating doctors than his treating doctors. Dr. Kandasamy, Dr. Yezdani, and Dr. Luther each provided a one-time only general physical examination of Stadler as a part of his admission to Rockford Center for psychiatric treatment. Dr. Simon is a consultant psychiatrist for the state. But the ALJ gave greater weight to their opinion than to the opinions of the physical therapists and orthopedic specialist regularly treating Stadler's knee injury. Stadler's physical therapists noted that "significant findings" related to the knee impairment continued, despite physical therapy and injections. (Tr. 301). Stadler's orthopedic specialist, Dr. Mesa, concluded that Stadler needed reconstructive knee surgery due to continued instability. (Tr. 447). See *Gonzalez v. Astrue*, 537 F.Supp.2d 644, 663 (D. Del. 2008) ("The opinions of non-treating physicians must be examined for whether, and how *612 well, these opinions take account of and explain all of the other evidence in the record, including the opinions of treating physicians.").

Second, in the same document where Stadler reported reduced pain, the physical therapist concluded that Stadler was limited to repetitive standing, walking or driving no more than 30

12

minutes, and standing no more than 15 minutes. (Tr. 301). This is the only objective evidence in the record regarding Stadler's degree of functional limitations from his knee impairment. The ALJ concluded, however, that Stadler was capable of light work that greatly exceeds those limitations. By definition, light work requires standing/walking six hours per day. *See* SSR 83-10, 1983 WL 31251 *6 (defining light work as requiring six hours of standing/walking in an eight-hour workday).

Third, as the ALJ notes, Dr. Mesa observed that after physical therapy Stadler had increased range of motion and no gross instability. But, that did not mean that Stadler had gained full functionality. About six months later, Dr. Mesa recommended reconstructive knee surgery to address Stadler's continued instability. (Tr. 447).

Finally, as the ALJ notes, there is no evidence in the record that Stadler would be able to ambulate normally after surgery. The record is simply silent on this point. Thus, the ALJ had to speculate that Stadler would be fully functional twelve months after the operation. If anything, however, the record suggests a potential for continued problems. This was the second reconstructive surgery on Stadler's right knee. (Tr. 22). An MRI showed degenerative joint disease. (Tr. 311). Dr. Mesa noted that degenerative changes might mean that pain would persist even after surgery. (Tr. 447).

Because the outcome of Stadler's surgery was uncertain and critical to determining whether Stadler was disabled, the ALJ should have further developed the record before rendering a decision on that issue. *See* 20 C.F.R. § 404.1512(d) (indicating that the Agency has the responsibility to develop a "complete medical history"); *Sims v. Apfel*, 530 U.S. 103, 111 (2000) ("It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.");

*Ferguson v. Massanari*, 2001 WL 902207 *8 (D. Del. July 31, 2001) (reversed and remanded where ALJ failed to develop and investigate an impairment).

### IV.    CONCLUSION

For the foregoing reasons, (1) Stadler's motion for summary judgment (D.I. 11) is GRANTED; and (2) the Commissioner's motion for summary judgment (D.I. 13) is DENIED. This matter is remanded for further administrative proceedings consistent with this opinion. An appropriate order will be entered.

Dated: March 28, 2016

_____
UNITED STATES DISTRICT JUDGE